## ABBIE DILLE v. AARON CARLSON COMPANY AND ANOTHER.[1]

June 22, 1951.

No. 35,492.

*R. H. Fryberger,* for relator.
*Reynolds & McLeod,* for respondents.

MAGNEY, JUSTICE.

Certiorari to review order of industrial commission denying compensation.

Aaron Carlson Company, hereinafter referred to as the employer, is a partnership engaged in the business of manufacturing architectural millwork for building construction. Ralph L. Dille was its employe. On August 29, 1948, Dille was fatally injured in an airplane crash. The industrial commission determined that the accident in which Dille lost his life did not arise out of and in the course of his employment and denied compensation.

For several years Dille had been employed as an office man by the employer. He did estimating and pricing, checked up on orders

[1]Reported in 48 N. W. (2d) 564.

as they came in, and saw to it that they were properly invoiced. It was his responsibility to see that the work was gotten out. Part of his duties consisted of keeping informed on possible jobs which he could sell, and occasionally he called on customers. It was not his duty to see that the work met specifications.

On August 29, 1948, while Dille and his son were on their way home from Chicago, the plane on which they took passage crashed and they lost their lives. Relator contends that Dille's trip to Chicago was a business trip for his employer, and that the accident arose out of and in the course of his employment. Employer and its insurer claim that Dille's trip to Chicago was one for his own convenience and pleasure only and that he performed no work and carried on no business for employer on that trip.

Relator bases her contention on the following detailed facts: In the early part of 1948, employer did work for S. N. Nielsen Company, Inc., of Chicago, hereinafter referred to as the Nielsen company, in the furnishing of millwork for a certain building in Chicago for the Benefit Association of Railway Employees at a contract price of $10,765. The contract for this work was entered into by correspondence. Dille made the estimate for this work. The building was substantially completed before June 15, 1948, but later it was decided to remodel certain offices in the old building owned by the association. By letter dated August 27, 1948, the Nielsen company ordered additional millwork amounting to $698, "per your proposal of December 15, 1947." It was accepted by the employer on August 31, 1948. By another letter dated August 27, the Nielsen company ordered another extra amounting to $62.50 "as itemized on invoice, dated April 30, 1948." Both these orders were accepted by L. A. Rosene, an employe of the employer.

On August 24, 1948, the Nielsen company addressed a letter to the employer as follows:

"Your proposal dated July 22 in the amount of four hundred ninety and 00/100 dollars ($490.00) for furnishing and delivery of coat racks * * * is hereby accepted as an addition to your contract price.

"Please indicate your acceptance of this change order by signing in the space designated below * * *.

> "Yours very truly,
> "S. N. Nielsen Company
> E. C. Liewehr

"ECL:j
"Accepted:
Aaron Carlson Company
R. L. Dille"

Stamped on the letter were the words:

"Received Aug 26 1948 S. N. Nielsen Co."

On the morning of August 26, 1948, Dille and his son took the train to Chicago, arriving there at 2:59 p. m. They registered at the LaSalle Hotel at 4:28 p. m. Relator contends that during the time between 2:59 p. m. and 4:28 p. m. Dille called at the office of the Nielsen company in connection with his employer's business.

Dille was a man who had the habit of making detailed memoranda in connection with his activities. In his effects after the accident was found a memorandum on the letterhead of the LaSalle Hotel. Under date of August 26, he noted the following items:

"Hiawatha to Chicago.
"PM. Saw Neilson Co.
"Evening—Oklahoma Stage Show—9 row center"

Under date of August 27, he listed his activities from morning until 1 a. m., detailing among other things the seat he occupied at the baseball game in the afternoon, the names of the members of the stage show he saw after the game, the names of the members of the football teams he saw play in the evening, and the kind of sandwiches he ate at 1 a. m. He also detailed his activities under date of August 28 up to 1 a. m.

Several witnesses testified that a few days prior to the trip Dille told them that he was making a business trip to Chicago. Based primarily on the facts that employer had business transactions

with the Nielsen company of Chicago; that under date of August 26 Dille had made the entry "PM. Saw Neilson Co." on his memorandum; and that prior to August 26 he told several persons that he was going to make a business trip to Chicago, relator contends that the accident which took his life on his return trip arose out of and in the course of his employment. Employer and its insurer contend that the evidence is insufficient to support a finding that Dille made the trip to Chicago in his employer's interest and that the accident which occurred on his return trip cannot be said to have arisen out of and in the course of his employment.

Employer and its insurer question the admissibility of the memorandum made by Dille and the testimony of witnesses who stated that Dille told them he was going to make a business trip to Chicago. It is not necessary to determine the matter of admissibility, since in our view of the case, even if this evidence had been competent and properly received, it could not affect the result we have reached.

It is uncontradicted that when any employe made trips for the employer the company would buy the transportation and make a voucher for the expense money. In this instance, Dille bought his own transportation and made out his own reservations. No expense money was advanced to him. Evidence is to the effect that employer knew of no business which Dille had to perform for it in Chicago and gave him no orders to do any work for it in that city. He had no business papers of the company in his possession. In the line of his duties, it was necessary for Dille to receive an order if he went out to promote the business of the company. A. L. Spencer, executive vice president of the Nielsen company, who handled the business of that company with the exception of the financial end, said that he had never met Dille or talked to him over the telephone. There is no evidence that he entered the office of the Nielsen company or that he got in touch with anyone connected with that company. To say that Dille did business with the Nielsen company because of the entry on his memorandum would be pure speculation. Because of the entry "PM. Saw Neilson Co." on the

memorandum, relator suggests that Dille had with him on his trip to Chicago the letter of August 24, 1948, from the Nielsen company to his employer; that the acceptance by Dille as found in that exhibit was made in the office of the Nielsen company in Chicago on the afternoon of August 26 between the hours of 2:59 p. m. and 4:28 p. m.; and that the letter could not have arrived in Minneapolis and been returned to the Nielsen company in Chicago between the date it bears and the date it was marked received by the Nielsen company. It would seem that in the ordinary course of mail, whether it was sent by air or ordinary mail, the letter could very readily make the round trip during that period of time. The business relationship between Dille's employer and the Nielsen company was of the best. There was no dispute or misunderstanding between them. To say that it was necessary, or even sensible, to make a trip to Chicago just to accept an undisputed order involving only $490 does not seem reasonable. If Dille had entered the office of the Nielsen company that afternoon, and that business with that company was the chief concern or one of the concerns of his trip to Chicago, in view of the fact that he detailed minutely all his other activities while in that city, one could expect that in his memorandum he would elaborate on his statement that in the afternoon he saw the Nielsen company. About the only conclusion one can draw is that, because of the business dealings between his employer and the Nielsen company, he was curious or interested in seeing the headquarters of that company.

This case presents a question of fact. We have repeatedly stated our rule in such a situation. Here, the facts and the inferences to be drawn from them reasonably sustain the finding of the commission. In our opinion, a contrary finding could not have been sustained.

Order affirmed and writ discharged.